

# Exhibit 9



ENTERED
05/22/2018

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 18-32218 |
| BRIAR BUILDING HOUSTON, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

## ORDER GRANTING DEBTOR'S EXPEDITED MOTION TO APPROVE COMPROMISE WITH BDFI, LLC
### [Relates to D.I. 30]

The Court has considered the Debtor's Expedited Motion to Approve Compromise with BDFI, LLC and finds that the proposed compromise is in the best interests of the Debtor and its creditors, and should be approved. It is, therefore

ORDERED that the compromise with BDFI, LLC, as set out in the Agreement (the "Forbearance Agreement") attached to this Order as **Exhibit A**, is hereby approved; and it is further

ORDERED that the Debtor is authorized to execute, and the parties are bound by the terms and conditions of the Forbearance Agreement, and it is further

ORDERED that the Debtor is authorized and directed to take all actions necessary to implement the terms of the Forbearance Agreement, including, but not limited to, taking such further action as may be necessary to obtain the prompt dismissal of this chapter 11 case; and it is further

ORDERED that, upon any subsequent dismissal of this chapter 11 case, the provisions of 11 U.S.C. §349, to the extent applicable, shall not affect or impair the rights and obligations of the parties under the Forbearance Agreement; and it is further

ORDERED that this Order is effective immediately upon entry. Any stay of this Order provided for under any provision of the United States Bankruptcy Code or the Federal Rules of Bankruptcy Procedure is expressly lifted.

Signed: May 22, 2018

Eduardo V. Rodriguez
United States Bankruptcy Judge

# AGREEMENT

THIS AGREEMENT (this "**Agreement**") dated as of May \_ll\_, 2018 ("**Effective Date**"), is executed by and among **George M. Lee**, an individual **("Lee")** and Briar Building Houston, LLC ("**Record Owner**"), collectively **("The Lee Parties")**, and **BDFI LLC** ("**Lender**").

## RECITALS:

A. Green Bank, N.A. ("Original Lender") and 50 Briar Hollow LLC, a Texas limited liability company ("Borrower") executed and delivered a Loan Agreement ("**Loan Agreement**") dated December 30, 2013, pursuant to which Original Lender made a loan ("**Loan**") to Borrower evidenced by a promissory note (as same may have been heretofore amended, the "**Note**") dated December 30, 2013, payable to the order of Original Lender in the original principal amount of $20,000,000.00, and secured by, among other things, that certain Deed of Trust, Assignment of Leases and Rents, and Security Agreement (the "**Mortgage**" whether a deed of trust or a mortgage) dated of even date with the Note, covering certain real property as more particularly described in *Exhibit A* attached hereto and incorporated herein for all purposes, and any other property (whether real and personal) described therein (the property covered by the Mortgage, whether real property or personal property, is referred to as the "**Property**"). The Loan was originally made by Green Bank, N.A. and subsequently assigned to Lender by that certain Assignment and Assumption Agreement dated March 9, 2018 as recorded in the Harris County Real Property Records on March 12, 2018 at Film Code RP-2018-102728.

B. Lee appointed Thomas L. Hunt as substitute trustee as recorded in the Harris County Real Property Records on March 13, 2017 at Film Code RP-2017-105552. Thomas L. Hunt subsequently foreclosed on the Property on April 4, 2017 and executed the Foreclosure Sale Deed on April 6, 2017 thereby deeding the Property to Lee. Thomas L. Hunt subsequently filed a lawsuit on behalf of Lee seeking a temporary restraining order and temporary injunction hearing (Cause Number 201820404, styled *George M. Lee v. BDFI LLC, Ali Choudhri, Jim. D. Hamilton and Jetall Companies, Inc.*; in the 151st District Court of Harris County, Texas (the "Lawsuit")). Lee obtained a temporary restraining order, paid a $150,000.00 bond in connection therewith, and subsequently non-suited the Lawsuit.

C. Events of Default exist under the Loan Documents (as later defined) and the Loan has been accelerated and is due and payable in full, but Record Owner has requested that Lender forbear from exercising its remedies under the Loan Documents.

D. Lender is willing to so forbear, but only on the terms and conditions set forth in this Agreement.

E. Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Loan Documents.

## AGREEMENT:

NOW, THEREFORE, in consideration of the mutual benefits hereunder, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender and Record Owner ^AND the The Lee Parties hereby agree as follows:

*[handwritten: AND the The Lee Parties 5/21/18 BP]*

**EXHIBIT "A"**

*[handwritten initials: BP]*

1. **Acknowledgments of Default**. The Lee Parties acknowledge and agree that on and as of the date hereof, material Events of Default existed and continue to exist under the Loan Documents (the "**Existing Events of Default**").

2. **Acknowledgments of the Lender's Right to Payment**. The Lee Parties acknowledge and agree that (a) on and as of the date hereof, Lender has and has had the right to make demand on Borrower for the payment in full of all liabilities and obligations of Borrower under the Loan Documents, (b) Lender has made written demand to Borrower for payment of such liabilities and obligations which is in all respects adequate and proper, (c) the entire Loan balance has been accelerated and has been in default and accruing at a default rate of 18% since the first event of default (The Lee Parties acknowledge and agree the default interest rate is 18%) and (d) neither Lee nor Record Owner are entitled to receive any notices of whatever kind or nature whatsoever as may otherwise be required under the Loan Documents or at law, including, without limitation, presentment, demand for payment and/or of non-payment, notice of dishonor, notice of intent to accelerate and of acceleration, protest, notice of protest, notice of foreclosure, and any and all other notices of any kind or nature whatsoever, and further, Lee knowingly and voluntarily waives each and every notice otherwise required with respect to the Loan Documents or at law, except any such notice specifically required by this Agreement. Furthermore, The Lee Parties acknowledge that Lender is the present and lawful owner and holder of the Loan and beneficiary under the Deed of Trust dated December 30, 2013 executed by 50 Briar Hollow, LLC and recorded under Clerk's File No. 20130647992 of the Official Public Records of Real Property of Harris County, Texas, and the UCC Financial Statements recorded under Clerk's File No. 20130648364 of the Official Public Records of Real Property of Harris County, Texas and filed under Texas Secretary of State File No. 13-0040500063, and all other documents evidencing or securing the Loan (the "**Loan Documents**").

3. **Forbearance**. The above recitals serve as the basis for this Agreement and are incorporated herein and made a part hereof for all purposes. The Lee Parties and Lender each hereby acknowledge the above recitals to be true and correct as of the date hereof. So long as no Termination Event (as hereinafter defined) occurs, Lender agrees to forbear from instituting any remedies under the Loan Documents or pursuing any remedies previously instituted in a court of law except for filing such motions or making such appearance in such courts which are necessary solely to prevent dismissal of the remedy previously instituted. Notwithstanding the foregoing, (i) any forbearance granted by Lender shall not constitute and shall not be construed as, or interpreted to constitute, a waiver of any default which may now or hereafter exist under the Note, the Mortgage or the other Loan Documents and (ii) this Agreement and the forbearance granted by Lender hereunder shall not constitute an amendment or modification of any of the Loan Documents. All other rights of the Lender contained in the Loan Documents shall remain in full force and effect. Upon the expiration or termination of the Forbearance Period (as hereinafter defined) or upon the occurrence of a Termination Event, Lender shall be entitled to exercise all rights and remedies available to Lender under the Loan Documents or at law, in equity or otherwise, including, without limitation, institution of foreclosure proceedings against the Property and institution of, or proceeding with, other remedies provided in the Guaranty and the other Loan Documents. All periods of limitation specified by statute and all defenses of laches or waiver as to any default existing on the Effective Date, or arising during the Forbearance Period, will be tolled and otherwise suspended during the Forbearance Period.

4. **Forbearance Period**. The Forbearance Period (herein so called) shall commence on the Effective Date of this Agreement, and shall automatically terminate or expire, without notice, on the earlier to occur of (i) a Termination Event or (ii) August 31, 2018 (the "**Forbearance Period**"). Nothing herein shall prohibit Lender from posting the Property for a foreclosure sale.

5. **Record Owner's Covenants**. As a condition to Lender's forbearance during the Forbearance Period, as contemplated herein, Record Owner covenants and agrees as follows notwithstanding anything to the contrary in the Loan Documents:

(a) Record Owner shall immediately begin pursuing the sale of the Property with proceeds sufficient to pay all of the outstanding amounts under the Loan Documents in full. Such commitment or purchase and sale agreement shall require the transaction contemplated thereby to close on or before August 31, 2018 and otherwise must be in a form acceptable to Lender in its sole discretion.

(b) Record Owner shall hire Boxer Property to take over management of the Property no later than May 9, 2018 pursuant to a management agreement acceptable to Lender in its sole discretion.

(c) Record Owner shall direct all tenants to send all rental payments and any and all forms of Property income and revenue to a Lender-controlled lockbox for deposit.

(d) Record Owner shall file a motion for the unconditional dismissal to withdraw Case No. 18-32218, *In re Briar Building Houston, LLC*, filed and pending in the Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Case") on or before May 15, 2018, at 3:00 o'clock p.m., and Record Owner will utilize best efforts to ensure the Bankruptcy Case is dropped and dismissed no later than Monday, May 14, 2018.

(e) Record Owner shall cooperate with and provide such information and access as may be requested by Lender's third-party appraiser and environmental consultants in preparation of their reports.

(f) Briar Building Houston, LLC shall transfer the Property to Lee, who shall release the Deed Of Trust he placed on the Property and cancel the $3.15 million Note issued in conjunction with the lien. The transfer, release of the lien and the cancellation of the debt shall occur within 24 hours of the entry of the Order dismissing the Bankruptcy Case.

(g) Lee shall not cause or allow the Property to be transferred without the prior written consent of the Lender.

6. **Termination Event**. Each of the following shall be defined as a "Termination Event":

(a) Record Owner shall fail to perform, observe or comply with any covenant, agreement or term contained in this Agreement;

(b) any of the representations or warranties in Section 9 hereof shall be untrue or incorrect when this Agreement was made or while this Agreement is in effect;

(c) Record Owner shall fail to perform, observe or comply with any covenant contained in any of the Loan Documents;

(d) any Default (other than the Existing Events of Default) shall occur under the terms of any of the Loan Documents, without regard to any requirement for grace, notice or an opportunity to cure, all of which are waived by the Lee Parties;

(e) Record Owner or any Affiliate or other party with a legal, beneficial, or equitable ownership interest or lien or security interest in or on the Property (collectively, the "**Property Interest Parties**"), shall commence a voluntary proceeding, or an involuntary proceeding shall be commenced against Record Owner, or any of the Property Interest Parties, seeking liquidation, reorganization, or other relief with respect to Record Owner, or any of the Property Interest Parties, or their respective debts under any bankruptcy, insolvency, or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or a substantial part of their respective property or of the Property itself.

(f) Record Owner continues to assert its rights in the Bankruptcy Case after May 14, 2018;

(g) the commencement of litigation or legal proceedings by Record Owner or any other Property Interest Parties against the Lender or any of its affiliates; and

(h) the filing or commencement of any indictment, charge or proceeding, whether criminal or civil, pursuant to Federal or state law against Record Owner.

(i) Record Owner shall fail to present an executed purchase and sale agreement as required by Section 5(a) hereof.

7. **Rights and Remedies upon Expiration or Termination**. Upon the expiration or termination of the Forbearance Period, Lender shall have the right to immediately cease or terminate Lender's forbearance hereunder, without further notice or demand, whereupon Lender shall be entitled to immediately exercise any and all rights and remedies available to Lender under this Agreement, the Loan Documents, at law, in equity or otherwise, which rights and remedies would include, without limitation, the institution of foreclosure proceedings against the Property, without any further notice of whatever kind or nature whatsoever, including, without limitation, presentment, demand for payment and/or of non-payment, notice of dishonor, notice of intent to accelerate and of acceleration, protest, notice of protest, notice of foreclosure, and any and all other notices of any kind with respect to the Loan Documents except any such notice specifically required by this Agreement, Record owner acknowledging and agreeing that it is not entitled to receive any notices of whatever kind or nature whatsoever as may otherwise be required under the Loan Documents or at law, including, without limitation, presentment, demand for payment and/or of non-payment, notice of dishonor, notice of intent to accelerate and of acceleration, protest, notice of protest, notice of foreclosure, and any and all other notices of any kind or nature whatsoever and knowingly and voluntarily waives each and every notice

otherwise required with respect to the Loan Documents or at law, except any such notice specifically required by this Agreement, and each and every such notice being expressly waived by Record Owner.

8. **Conditions Precedent**. This Agreement shall not be enforceable until the conditions precedent described below in this Section 8 shall have been satisfied:

(a) Record Owner shall have submitted a motion for the unconditional dismissal of the Bankruptcy Case and Record Owner shall have delivered to Lender this Agreement, executed by each of The Lee Parties, and such other documents as Lender may require relating to the formation, existence and good standing of Record Owner and to the authority of any person executing this Agreement or other documents on behalf of Record Owner all in form satisfactory to Lender.

(b) All representations and warranties by Record Owner set forth herein or given in connection herewith shall remain true and correct in all material respects, and Record Owner shall have timely performed or complied with all of its obligations and agreements under this Agreement.

9. **Representations and Warranties**. Record Owner hereby represents and warrants to Lender as follows:

(a) Power and Authority. Record Owner has the requisite power and authority to own its properties and assets and to carry on that business that is now being conducted.

(b) Fully Authorized. Record Owner is fully authorized and permitted to enter into this Agreement, to execute any and all documentation required herein, and to perform the terms of this Agreement, none of which conflicts with any provision of any law, rule or regulation applicable to Record Owner.

(c) Valid Obligation. This Agreement is the valid and binding legal obligation of Record Owner, enforceable in accordance with its terms.

(d) Valid Liens. The liens, security interests and assignments created by the Loan Documents continue to be valid, effective, properly-perfected, and enforceable liens, security interests and assignments.

(e) No Breach or Default. The execution, delivery and performance by Record Owner of this Agreement and all other documents and instruments relating thereto will not result in any breach of the terms, conditions or provisions of, or constitute a default under (i) any provision of the organizational documents of Record Owner or (ii) any law, rule or regulation applicable to Record Owner.

(f) No Adverse Proceedings. There are no actions, suits or proceedings pending or threatened against Record Owner that might materially and adversely affect the ability of Record Owner to perform under this Agreement. Record Owner is not in default with respect to any order, writ, injunction or decree, of any court, governmental department, commission, board, agency or official.

(g) <u>Pending Bankruptcy Proceeding</u>. This Agreement is executed voluntarily and not pursuant to any duress, is executed in mutual good faith among Lender and Record Owner, and is not given or intended to hinder, delay or defraud any creditor or to contravene any of the bankruptcy laws of the United States (including, without limitation, the provisions of 11 U.S.C. Section 101, et seq., as amended) or any other applicable laws. As of the date of the execution of this Agreement, after approval by the bankruptcy court in the Bankruptcy Case, and the associated unconditional dismissal of it, (i) neither Record Owner, nor any Property Interest Parties will be a debtor in a pending bankruptcy proceeding and (ii) Record Owner is not aware of any threatened bankruptcy proceeding by or against any of them.

10. **Lawful Interest Rate**. All agreements between Borrower or Record Owner and Lender or any other lawful holder of the Note, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by acceleration of maturity hereof or otherwise, shall the amount charged, paid or agreed to be paid to Lender or the holder of the Note, or collected by Lender or such holder, for the use, forbearance or detention of the money to be loaned hereunder or otherwise, or for the payment or performance of any covenant or obligation contained herein or in the Mortgage or in any of the other Loan Documents, exceed interest at the maximum rate permitted by applicable law (the "**Maximum Rate**"). If under any circumstances whatsoever, fulfillment of any provision hereof or of the Mortgage or any other Loan Documents, at the time performance of such provision shall be due, shall involve exceeding the limit of validity prescribed or permitted by law, including judicial determination, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity; and if under any circumstances Lender or any other holder hereof shall ever receive an amount deemed interest by applicable law which would exceed interest at the Maximum Rate, such amount that would be excessive interest under applicable usury laws shall be applied to the reduction of the principal amount owing under the Note or to other indebtedness secured by the Mortgage and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal and such other indebtedness, the excess shall be deemed to have been a payment made by mistake and shall be refunded to Borrower or to any other person making such payment on Borrower's behalf. All sums charged, paid or agreed to be paid to the holder of the Note for the use, forbearance or detention of the indebtedness of Borrower evidenced by the Note, outstanding from time to time, shall, to the extent permitted by applicable law and to the extent necessary to preclude exceeding the limit of validity prescribed by law, be amortized, prorated, allocated and spread from the date of disbursement of the proceeds of the Note until payment in full of the Loan in such manner as may be permitted by law to provide that interest on the Loan is not and will not be usurious. The terms and provisions of this paragraph shall control and supersede every other provision of all agreements between Record Owner and Lender.

11. **Bankruptcy of Record Owner**.

(a) Record Owner acknowledges that the forbearance of Lender demonstrates Lender's effort to enable Record Owner to solve its financial problems relating to the Property, and during the Forbearance Period suspends some of the financial obligations of Record Owner to Lender under the Loan except as provided in this Agreement. Record Owner further acknowledges that Events of Default exist under the terms of the Loan

Documents, and that this Agreement constitutes a negotiated forbearance by Lender in enforcing the obligations of Borrower and/or Record Owner existing under the Loan Documents or at law. Record Owner represents to Lender that as of the date of this Agreement, (i) Record Owner has been unable to obtain financing to pay the unpaid balance of the Loan to Lender, (ii) Record Owner has been unable to sell the Property to another party for the amount of the Loan owing to Lender, and (iii) neither Record Owner nor any partner of Record Owner has the money, or is willing to commit or contribute the money, necessary to pay the Loan current. Record Owner acknowledge and confesses that the agreement embodied herein was undertaken in lieu of reorganizing under Title 11 of the Bankruptcy Code, as amended (the "**Bankruptcy Code**"), and that Lender's willingness to enter into this Agreement is premised upon the Record Owner's representations that it will immediately remove itself from bankruptcy. Record Owner acknowledges and confesses that Lender has relied upon Record Owner's representations that this Agreement constitutes Record Owner's best opportunity to both protect Record Owner's interest in the Property and pay its indebtedness to Lender, and that Record Owner has eschewed its rights under the Bankruptcy Code in entering into this Agreement. Record Owner agree that, in consideration of the mutual covenants contained herein, specifically including the representations and acknowledgments set forth in this paragraph and the forbearance of Lender from currently exercising its rights and remedies under the Loan Documents, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, if Record Owner shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under the Bankruptcy Code, (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any trustee, receiver, conservator, or liquidator, (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction approving a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled to immediate relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of any rights and remedies otherwise available to Lender as provided in the Loan Documents, as hereby amended, and as otherwise provided by law, or, at Lender's option, Record Owner shall promptly join with Lender in a joint motion to the appropriate bankruptcy judge or tribunal requesting a court order for the expeditious and non-controverted relief of Lender from the automatic stay imposed by Section 362 of the Bankruptcy Code. Record Owner waive any right or claim to object to the granting of relief from stay to Lender upon the commencement of any bankruptcy case or proceeding.

(b) In consideration of the agreement by Lender to forbear in enforcing Lender's rights and remedies under the provisions of the Loan Documents under the terms of this Agreement and Record Owner's representations and covenants to Lender contained herein, Record Owner agrees that if Record Owner should file a petition under the Bankruptcy Code prior to the payment in full of all sums due and owing under the

Note, the Mortgage and the Loan Documents, such a petition and filing shall be deemed to be an act of bad faith against Lender under the Bankruptcy Code and the cases interpreting a bad faith filing thereunder. Record Owner agrees that upon the entry of an order for relief in any bankruptcy case or proceeding commenced by or against Record Owner, Lender shall be entitled to immediate relief in any bankruptcy case or proceeding commenced by or against Record Owner, Lender shall be entitled to immediate relief from the automatic stay or dismissal of the case as a consequence of such bad faith.

12. **No Amendment or Modification**. Nothing contained herein shall in any manner be construed to amend or modify the terms and provisions of the Note or any of the other Loan Documents, including, without limitation, any terms and provisions relating to the accrual of any interest on any outstanding and unpaid amounts due and payable under the Note and/or the Mortgage, or the amount of any payments due and payable under the terms of the Note.

13. **Exculpation**. By execution hereof, Record Owner hereby expressly acknowledges and agrees that Lender shall not be deemed or construed to have assumed any responsibility or liability for the Property, or the management, operations, leasing thereof. Lender shall not be deemed or construed to be a mortgagee in possession as a result of this Agreement or as a result of any actions taken by Lender or Record Owner pursuant hereto.

14. **Further Assurances**. Record Owner hereby agrees to execute, acknowledge, deliver, file and record such further certificates, instruments and documents and do all other acts and things, as may be reasonably necessary or advisable to carry out the intents and purposes of this Agreement, including, without limitation, signing any other document, instrument, or agreement required of, or contemplated by, this Agreement.

15. **No Waiver; Strict Performance**.

(a) Record Owner hereby expressly acknowledges and agrees that (i) no failure or delay by Lender in exercising any right, power or remedy under this Agreement or under any of the Loan Documents shall operate as a waiver thereof, (ii) no failure or delay by Lender to insist upon the strict performance by Borrower, Guarantor and/or Record Owner of any term, condition, covenant or agreement or to exercise any right, power or remedy as a result of the breach thereof shall constitute a waiver of any such term, condition, covenant or agreement or of any breach thereof or preclude Lender from insisting on the strict performance thereof, (iii) no single or partial exercise of any right, power or remedy of Lender shall preclude further exercise of any right, power or remedy, and (iv) Lender's acceptance or application of any partial or future payments shall not be deemed to be a waiver, release or estoppel of Lender's rights to demand, receive and collect the balance of all other sums due under the Loan, including, without limitation, interest at the Default Rate, or preclude Lender from requiring the full and timely payment of any and all amounts due under the terms hereof or any of the Loan Documents.

(b) The execution of this Forbearance Agreement by Record Owner and/or Lender shall in no manner impair, reduce or alter any obligations and liabilities of the

Record Owner or the obligations of Borrower and/or Record Owner under the documents and instruments evidencing or pertaining to the Loan, including any Loan Document.

16. **Advice of Counsel; Inducement**. The parties hereto acknowledge that they have been advised of the facts bearing on the matters set forth in this Agreement and that each of them has been advised of their legal rights by an attorney of their choice and selection. Each party acknowledges that he, she or its duly authorized officer has read this Agreement in its entirety and fully understands its content and effect. Each party hereto acknowledges that this Agreement is being made as a free choice of each of the parties.

17. **Relationship**. The relationship between Lender and Record Owner is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with the Record Owner, and is not a partner or joint venturer with Record Owner, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between Record Owner and Lender to be other than that of debtor and creditor.

18. **Costs and Expenses**. Record Owner shall be responsible for paying, or causing to be paid, its own costs and expenses (including legal fees for its legal counsel) incurred in connection with the execution and delivery of this Forbearance Agreement and shall be responsible for paying, or causing to be paid, Lender's legal fees incurred in connection herewith.

20. **Applicable Law**. IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE LOAN DOCUMENTS AND THE OBLIGATIONS ARISING HEREUNDER AND THEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION, AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT TO THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, THE LAW OF THE STATE OF TEXAS SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, RECORD OWNER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT, AND THE LOAN DOCUMENTS, AND THIS AGREEMENT, AND THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.

21. **Headings**. The section headings hereof are inserted for convenience of reference only and shall in no way alter, amend, define or be used in the construction or interpretation of the text of such section.

FORBEARANCE AGREEMENT

Page 9

22. **Successors and Assigns**. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, legal and personal representatives, successors and assigns, provided, however, that the foregoing shall not be construed to confer any right, title, benefit, cause of action or remedy upon any person or entity not a party hereto, which such party would not or did not otherwise possess.

23. **Construction**. Whenever the context hereof so requires, reference to the singular shall include the plural and likewise, the plural shall include the singular; words denoting gender shall be construed to mean the masculine, feminine or neuter, as appropriate; and specific enumeration shall not exclude the general, but shall be construed as cumulative of the general recitation.

24. **Amendment**. The provisions of this Agreement may be amended or waived only by an instrument in writing signed by the parties hereto.

25. **Severability**. If any clause or provision of this Agreement is or should ever be held to be illegal, invalid or unenforceable under any present or future law applicable to the terms hereof, then and in that event, it is the intention of the parties hereto that the remainder of this Agreement shall not be affected thereby, and that in lieu of each such clause or provision of this Agreement that is illegal, invalid or unenforceable, such clause or provision shall be judicially construed and interpreted to be as similar in substance and content to such illegal, invalid or unenforceable clause or provision, as the context thereof would reasonably suggest, so as to thereafter be legal, valid and enforceable.

26. **Counterparts**. To facilitate execution, this Agreement may be executed in as many counterparts as may be convenient or required, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, each of the parties hereto.

27. **Ratification; Release of Lender**. Record Owner hereby ratifies, reaffirms, acknowledges, and agrees that the Loan Documents represent valid, enforceable and collectible obligations of Borrower and Guarantor and that The Lee Parties have no knowledge of any offsets, defenses or claims against Lender, or any of its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, predecessors, successors or assigns whether asserted or unasserted, and neither of The Lee Parties will assert any claims for offset or otherwise assert any claims or defenses to the payment of the obligations under the Loan Documents. To the extent that such offsets, defenses or claims may exist, The Lee Parties and each of its or his respective successors, assigns, parents, subsidiaries, affiliates, predecessors, employees, agents, heirs and executors, as applicable (collectively, "Releasors"), jointly and severally, release and forever discharge and release Lender, its subsidiaries, affiliates, officers, directors, employees, agents, attorneys, predecessors, successors and assigns, both present and former, including Jetall Companies, Inc. and Ali Choudhri (collectively the "Lender Affiliates") of and from any and all manner of actions, causes of action, suits, debts, controversies, damages, judgments, executions, claims and demands whatsoever, asserted or unasserted, in law or in equity, which Releasors ever had or now have against Lender and/or Lender Affiliates, including, without limitation, any presently existing claim or defense whether or not presently suspected, contemplated or

anticipated. The term "Lender" as used herein shall include, but shall not be limited to, its present and former officers, directors, employees, agents and attorneys.

28. **Modifications**. All terms, conditions and provisions of the Loan Documents are continued in full force and effect and shall remain unaffected and unchanged except as specifically provided herein. The Loan Documents, as amended or affected hereby, are hereby ratified and reaffirmed by Record Owner and Record Owner specifically acknowledges the validity and enforceability thereof.

29. **No Release**. This Agreement in no way acts as a release or relinquishment of those liens, security interests and rights securing payment of the Loan, including, without limitation, the liens created by the Loan Documents. Such liens, security interests and rights are hereby ratified, confirmed, renewed and extended by Record Owner in all respects.

30. **Additional Documents**. Record Owner shall execute and deliver such additional documents and do such other acts as Lender may reasonably require and fully implement the intent of this Agreement.

31. **No Further Express or Implied Forbearance**. Notwithstanding anything to the contrary contained herein or in any other instrument executed by Record Owner or Lender, in any other action or conduct undertaken by Record Owner or Lender on or before the date hereof, the agreements, covenants and provisions contained herein shall constitute the only evidence of Lender's consent to forbear from the exercise of its rights and remedies available to it under the terms and provisions of the Loan Documents or to modify the terms and provisions of the Loan Documents. No express or implied consent to any further forbearance or modifications involving any of the matters set forth in this Agreement or otherwise shall be inferred from or implied by Lender's execution of this Agreement. Further, Lender's execution of this Agreement shall not constitute a waiver (either express or implied) of the requirement that any further forbearance involving, or modification of, the Loan Documents shall require the express written approval of Lender, no such approval (either express or implied) has been given as of the date hereof.

32. **Time of Essence**. Notwithstanding this or any prior forbearance, actual or implied, of any nature by Lender, including but not limited to any acceptance of late payments, time is hereby declared to be of the essence hereof, of the Loans, and of the Loan Documents, and Lender requires, and Record Owner agrees to, strict performance of each and every covenant, condition, provision and agreement hereof and of the Loan Documents.

33. **Lender's Actions**. Without limiting any of the foregoing, Record Owner agrees that, without affecting their liability, obligations and agreements under the Loan Documents as modified or affected hereby, Lender, in its sole discretion, at any time and from time to time, may (but shall not be obligated to) extend the time of payments under the Note, release any person liable therefor, release any collateral, or take or release any other security for the Note, without the consent of Record Owner.

35. **Course of Dealing**. Record Owner hereby acknowledges and agrees that at no time shall any prior or subsequent course of conduct by Record Owner or Lender directly or indirectly limit, impair or otherwise adversely affect any of Lender's rights, interests or remedies

FORBEARANCE AGREEMENT  Page 11

in connection with the Loan and the Loan Documents or obligate Lender to agree to, or to negotiate or consider an agreement to, any waiver of any obligation or default by Borrower under any Loan Document or any amendment to any term or condition of any Loan Document.

36. **Marketing of Property and Property Management.** Any company marketing the Property and any property manager shall provide full reporting to Lender and all communication will be copied to Lender.

37. **Operating Expense and Capital Expenditure Shortfalls.** Record Owner shall have the first option in its sole discretion to fund operating expense and capital expenditure shortfalls. In the event Record Owner is unwilling or unable to fund said shortfalls, then Lender shall have the right, but not the obligation, and in its sole discretion, to provide capital sufficient to fund any shortfall in capital expenditure or operating expense requirements. Lender's capital infusion will be considered a forced funding under the first lien note and shall increase the balance of Lender's first lien loan. This funding requirement is contingent upon Record Owner providing sufficient evidence (in Lender's sole discretion) that all rental revenues from the Property are utilized for operating and capital expenditure expenses of the Property and that there are absolutely no distributions made to the Record Owner or a Record Owner's affiliate.

38. **Return of Bond.** The Parties agree that Lee, or his designee, shall have the exclusive right, for a period of 180 days of the Effective Date of this Agreement, to file a motion requesting the return of the bond on deposit and paid in connection with the Lawsuit; provided, however, that the parties agree that no motion or other request for the return of the bond shall be filed until at least 21 days after a final order in the Bankruptcy Case has been entered. If the Bankruptcy Case is not dismissed within 180 days of the Effective Date of this Agreement, then either Party may file a motion to request the return of the bond.

39. **WAIVER OF JURY TRIAL.** RECORD OWNER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE OR HEREAFTER HAVE TO A TRIAL BY JURY AND AGREES THAT DISPUTES IN RESPECT OF ANY SUIT, ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ARISING OUT OF OR RELATING TO ANY LOAN DOCUMENT OR THE UNDERLYING TRANSACTION ITSELF SHALL BE SUBMITTED TO BINDING ARBITRATION. RECORD OWNER CERTIFIES THAT NEITHER THE LENDER NOR ANY OF ITS REPRESENTATIVES, AGENTS OR COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT IN THE EVENT OF ANY SUCH SUIT, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO TRIAL BY JURY.

[Signatures on following page]

EXECUTED as of the date first above written.

**BDFI LLC,**
a New York limited liability company

By: _____
Name: Bradley S. Parker
Title: Authorized Agent

Houston 5/21/18

**RECORD OWNER**

**Briar Building, LLC,**
a Texas limited liability company

By: _____
Name:
Title:

**LEE:**

_____
**GEORGE M. LEE**

# EXHIBIT A

## LEGAL DESCRIPTION OF THE PREMISES

All that certain 3.1708 acres of land out of Lot 9, Roy B. Nichols Subdivision according to the plat thereof filed at Volume 321, Page 431 Harris County Deed Records being the same property described in a deed dated 12-29-1994 from 50 B.H. Inc. to BNS Buildings, Inc., filed in the Official Public Records of Harris County, Texas at Clerk File No. R208710, Film Code No. 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, and being more particularly described by metes and bounds as follows:

BEGINNING at a found 5/8 inch iron rod marking the southeast corner of the end of Emmet Lane (30 feet wide) also being the most southerly southwest corner of Briar Hollow, according to the plat thereof filed at Volume 32, Page 61 Harris County Map Records;

THENCE S 89 degrees 56 minutes 00 seconds E-457.91 feet, with the south line of said Briar Hollow, to a found 5/8 inch iron rod with cap for corner;

THENCE along the centerline meanders of Briar Hollow Gully the following ten (10) courses and distances:

S 04 degrees 18 minutes 21 seconds W-75.54 feet to a found 5/8 inch iron rod with cap for angle point;

S 70 degrees 53 minutes 35 seconds W-28.65 feet to a called and found 1-1/4 inch iron pipe for angle point;

S 51 degrees 01 minutes 16 minutes W-71.17 feet to a called and found 1-1/4 inch iron pipe for angle point;

S 12 degrees 39 minutes 40 seconds E-80.46 feet to a found 5/8 inch iron rod with cap for angle point;

S 24 degrees 34 minutes 52 seconds W-15.47 feet to a found 5/8 inch iron rod with cap for angle point;

S 59 degrees 41 minutes 53 seconds W-15.10 feet to a found 5/8 inch iron rod with cap for angle point;

S 84 degrees 15 minutes 45 seconds W-11.90 feet to a found 5/8 inch iron rod with cap for angle point;

N 65 degrees 48 minutes 54 seconds W-29.20 feet to a called and found 1-1/4 inch iron pipe for angle point;

N 89 degrees 36 minutes 28 seconds W-53.02 feet to a found 5/8 inch iron rod with the cap for angle point;

S 74 degree 28 minutes 23 seconds W-77.11 feet to a found 5/8 inch rod with cap for corner;

THENCE N 25 degrees 50 minutes 33 seconds W-77.33 feet, with the south line of that certain 3.2309 acre tract as described in a Substitute Trustee's Deed dated 1-3-1989 from Mark D. Stout, Substitute Trustee to New England Mutual Life Insurance Company filed in the Official Public Records of Real Property of Harris County, Texas at Clerk File No. L995411, Film Code No. 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, to a found 5/8 inch rod with cap for corner;

THENCE N 78 degrees 28 minutes 22 seconds W-97.76 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod for angle point;

THENCE N 89 degrees 39 minutes 54 seconds W-113.14 feet, continuing with the south line of said 3.2309 acre tract, to a found 5/8 inch iron rod with cap for angle point;

THENCE N 89 degrees 56 minutes 00 seconds W-348.00 feet, continuing with the south line od said 3.2309 acre tract, to a found 5/8 inch iron rod for corner;